·(December 12, 1903.)

## CARSON v. CITY OF GENESEE.

### [74 Pac. 862.]

CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY—MUNICIPAL CORPORA-
TIONS—LIABILITY FOR DAMAGES—DEFECTIVE STREETS AND SIDE-
WALKS.

1. Where C. knew that ten days or two weeks previous there was a broken board in the sidewalk, and passes over the same at night-fall, and receives injuries on account thereof, and testifies that she "didn't even think about those holes," and that she had not been over them for one or two weeks, and that she was walking along "just the same as anyone would walk up the street," *held,* that such facts did not, as a matter of law, establish contributory negligence, but were properly submitted to the jury, together with the other facts in the case.

2. Previous knowledge of a dangerous place in a street or side-walk is not *per se* evidence of such negligence as will preclude a recovery, except in those cases where the known defect is so great as to prevent a reasonably cautious person from attempting to pass over such street or sidewalk in any usual manner.

3. Cities and villages incorporated under the general laws of Idaho, which grant to such municipal corporations exclusive control over their streets, avenues, lanes and alleys are liable in damages for a negligent discharge of the duty of keeping such streets and alleys in a reasonably safe condition for use by travelers in the usual modes.

4. Such liability exists in the absence of a·specific statute im-posing it.

5. Such liability results from the exclusive control granted over the streets, and the duty imposed to keep them in repair, and the power granted to raise adequate revenue therefor.

6. *Davis v. Ada County,* 5 Idaho, 126, 95 Am. St. Rep. 166, 47 Pac. 93, distinguished.

(Syllabus by the court.)

APPEAL from District Court in and for the County of Latah. Honorable E. C. Steele, Judge.

Action by plaintiff against the city of Genesee for damages sustained on account of personal injuries received from falling

on a defective sidewalk within the corporate limits of the city. Judgment for plaintiff and defendant appeals.   Affirmed.

The facts are stated in the opinion.

Forney & Moore, for Appellant.

Nearly, if not all, the authorities in the brief of appellant are cited in the opinion.

Stewart S. Denning, for Respondent.

Knowledge of a defect in a sidewalk by the person injured before he (or she) goes upon the same, or before the injury, does not *per se* establish negligence on his (or her) part. (*Village of Clayton v. Brooks,* 150 Ill. 105, 37 N. E. 574; *Samples v. City of Atlanta,* 95 Ga. 110, 22 S. E. 135; *Sias v. Village of Reed City,* 103 Mich. 312, 61 N. W. 502; *McKeigue v. City of Janesville,* 68 Wis. 50, 31 N. W. 298; *Kelley v. Town of Fond du Lac,* 31 Wis. 179; *Nichols v. Town of Laurens,* 96 Iowa, 388, 65 N. W. 335; *Mayor etc. v. Holmes,* 39 Md. 243; *Evans v. City of Utica,* 69 N. Y. 166, 25 Am. Rep. 165; *Millcreek Tp. v. Perry* (Pa.), 12 Atl. 149; *Monongahela Bridge Co. v. Bevard* (Pa.), 11 Atl. 575; *Kelly v. Blackstone,* 147 Mass. 448, 9 Am. St. Rep. 730, 18 N. E. 217; *Frost v. Waltham,* 12 Allen, 85; *Jordan v. City of Seattle,* 26 Wash. 61, 66 Pac. 114; *McQuillen v. City of Seattle,* 10 Wash. 464, 45 Am. St. Rep. 799, 38 Pac. 1119; *Shearer v. Town of Buckley,* 31 Wash. 370, 72 Pac. 76; *Maloy v. City of St. Paul,* 54 Minn. 398, 56 N. W. 94; *Smith v. City of Spokane,* 16 Wash. 403, 47 Pac. 888; *McLeod v. City of Spokane,* 26 Wash. 346, 67 Pac. 74.) Generally, the question of contributory negligence is for the jury to determine, from all the facts and circumstances of the particular case, and it is only in rare cases that the court is justified in withdrawing it from the jury. (*Railroad Co. v. Stout,* 17 Wall. 657, 21 L. ed. 745; *Grand Trunk R. R. Co. v. Ives,* 144 U. S. 408, 12 Sup. Ct. Rep. 679, 36 L. ed. 485; *Lowell v. Watertown Tp.,* 58 Mich. 568, 25 N. W. 517; *Detroit etc. R. R. Co. v. Van Stienberg,* 17 Mich. 121; *Maloy v. City of St. Paul,* 54 Minn. 398, 56 N. W. 94; *Ladonceur v. Northern Pac.*

*R. R. Co.*, 4 Wash. 38, 29 Pac. 942; *City of Denver v. Solomon* 2 Colo. App. 534, 31 Pac. 507; *Village of Clayton v. Brooks,* 150 Ill. 105, 37 N. E. 574; *Roux v. Lumber Co.,* 85 Mich. 519, 24 Am. St. Rep. 102, 48 N. W. 1092, 13 L. R. A. 728; Cooley on Torts, 670, 671; Elliott on Roads and Streets, sec. 67, and notes.) "Knowledge of the unsafe condition of the streets, to be complete defense, must be present knowledge." (*Smith v. City of Spokane,* 16 Wash. 403, 47 Pac. 888; *City of Centralia v. Krouse,* 64 Ill. 19; *City of Bloomington v. Chamberlain,* 104 Ill. 268; *McLeod v. City of Spokane,* 26 Wash. 346, 67 Pac. 74; *Drake v. City of Seattle,* 30 Wash. 81, 94 Am. St. Rep. 844, 70 Pac. 231.) "Momentary forgetfulness as to the condition of a sidewalk, over which a party is passing, is not necessarily conclusive proof of negligence in cases of this character." (*Kelly v. Blackstone,* 147 Mass. 448, 9 Am. St. Rep. 730, 18 N. E. 217.) Though a person has knowledge that a highway or sidewalk is out of repair, or even dangerous, he is not, therefore, bound to forego travel upon such highway or walk. (*City of Huntington v. Breen,* 77 Ind. 30; *Wilson v. Trafalgar,* 83 Ind. 326; *Wilson v. Trafalgar,* 93 Ind. 287; *Nave v. Flack,* 90 Ind. 212, 46 Am. Rep. 205; *City of South Bend v. Hardy,* 98 Ind. 586, 49 Am. Rep. 792; *Town of Albion v. Hetrick,* 90 Ind. 546, 46 Am. Rep. 230; *Turner v. Buchanan,* 82 Ind. 147, 42 Am. Rep. 485; *Town of Gosport v. Evans,* 112 Ind. 133, 2 Am. St. Rep. 164, 13 N. E. 256.) "Where a city has exclusive control and management of its streets, with power to raise money for their construction and repair, a duty (when not expressly imposed by law or charter) arises to the public from the character of the powers granted to keep its streets in a reasonably safe condition for use in the ordinary modes of travel, and that it is liable to respond in damages to those injured by a neglect to perform such duty." (*City of Denver v. Dunsmore,* 7 Colo. 328, 3 Pac. 705 (leading case); *Levy v. Salt Lake City,* 3 Utah, 63, 1 Pac. 160; *Snook v. City of Anaconda,* 26 Mont. 128, 66 Pac. 756 (leading case); *Farquar v. City of Roseburg,* 18 Or. 271, 17 Am. St. Rep. 732, 22 Pac. 110; *Sutton v. City of Snohomish,* 11 Wash. 24, 48 Am. St. Rep. 847, 39 Pac.

273 (leading case) ; Dillon on Municipal Corporations, 4th ed., sec. 999.; Elliott on Roads and Streets, 2d ed., secs. 611, and notes, 746.) A grant of power carries with it authority to do those things necessary to the exercise of the power granted. (*Wilson et al. v. Boise City*, 6 Idaho, 391, 55 Pac. 87.)

AILSHIE, J.—This action was commenced in the district court by the plaintiff against respondent to recover damages for personal injuries received while traveling over a defective sidewalk within the corporate limits of the appellant corporation. The appellant, city of Genesee, is a city of the second class, organized and existing under the general laws of this state. Plaintiff obtained a verdict and judgment. The city has appealed from the judgment and from an order denying it a new trial.

Both the briefs and oral arguments in the case have been entirely devoted to two assignments of error, and we will consider these points in the order in which they are discussed.

Appellant first contends that the court should have peremptorily instructed the jury to return a verdict for defendant, for the reason that the evidence shows the plaintiff guilty of contributory negligence. This contention is based upon the evidence of plaintiff wherein she testifies that she had "known this sidewalk to be in bad condition for a long time," and that she was passing over it in the night-time and "didn't even think about those holes." She also testifies that she had not been over this defective walk for from one to two weeks previous to the time of the accident. It appears that she had been visiting a sick neighbor and had gone over another walk that afternoon, but being detained until about dark, went back across lots part of the way and came out onto this street, and after traveling for some distance came to the intersection of the walk along Spruce street with the walk on Walnut street, where a hole was broken in the board into which she stepped and fell and received injuries. She says she was walking along "just the same as anyone would walk up the street," and that she did not know that the holes were still there or that the walk was still out of repair. This walk, notwithstanding its condition,

was in constant use by pedestrians going to and from their homes and places of business. It appears that the walk was in good repair on the other side of the street, and that the respondent could have reached her home over a sidewalk that was in safe condition.

The substance of appellant's contention on this point is: That for plaintiff to undertake to pass over this sidewalk with previous knowledge of the defect therein was *per se* contributory negligence, and that the trial court should have declared it so as a matter of law and taken the case from the jury. In support of this position appellant cites *Hobart v. City of Seattle,* 32 Wash. 330, 73 Pac. 383; *Rumple v. O. S. L. & U. N. Ry. Co.,* 4 Idaho, 13, 35 Pac. 700; *City of Bedford v. Neal,* 143 Ind. 425, 41 N. E. 1029, 42 N. E. 815; *City of Huntington v. Breen,* 77 Ind. 39; *Town of Gosport v. Evans,* 112 Ind. 133, 2 Am. St. Rep. 164, 13 N. E. '256; *City of Fort Wayne v. Breese,* 123 Ind. 581, 23 N. E. 1038; *Cincinnati etc. Ry. Co. v. Howard,* 124 Ind. 280, 19 Am. St. Rep. 96, 24 N. E. 892, 8 L. R. A. 593.

In *Hobart v. City of Seattle,* the supreme court of Washington held that a general verdict in favor of plaintiff should have been set aside where the special findings of the jury showed that plaintiff, a woman, had crossed over an open ditch on the afternoon of the accident, and that it was so wide and deep that she had to jump the ditch, and that it was raining and the banks were wet and slippery, and that with this knowledge she returned that way the same night, without a light, and in extreme darkness attempted to again jump the ditch and fell and received the injuries for which she sued. In that case the court held that with such facts before it the trial court should have declared the plaintiff guilty of contributory negligence as a matter of law. It will be observed that the evidence in that case was submitted to the jury and they found the specific facts which the court held were in conflict with their general verdict. That learned court appreciated the difficulty with which they were confronted and distinguished the facts in that case from the facts in the case of *Jordan v. Seattle,* 26 Wash. 61, 66 Pac. 114—a case where the evidence was very similar to

the facts in the case at bar, and wherein they had held that "the question of contributory negligence was for the jury."

This court, through Mr. Justice Morgan, announced the general rule as to contributory negligence in *Rumple v. O. S. L. & U. N. Ry. Co., supra,* and held that under the facts as proven in that case the plaintiff was, as a matter of law, guilty of contributory negligence and could not recover. There, it should be noted, the plaintiff received his injuries while trying to cross the track under a car attached to a locomotive and train of cars temporarily stopped. That case rests on a state of facts widely different from this case and throws but little light on the point here raised. *City of Bedford v. Neal, City of Huntington v. Breen, Town of Gosport v. Evans, City of Fort Wayne v. Breese* and *Cincinnati etc. Ry. Co. v. Howard, supra,* are all Indiana cases, and hold that the degree of care which should be exercised must be proportionate to the known danger, and that a person attempting to pass over a dangerous place of which he has knowledge will be held to a greater degree of caution and care than he would be if the danger were unknown to him.

In *City of Bedford v. Neal,* that court said: "Ordinary care, however, is a relative term. What would be ordinary care under one set of circumstances might be gross negligence under a different set of circumstances. Therefore what would constitute ordinary care to avoid injury in passing over a defective and unsafe sidewalk in the dark by one ignorant of its defective and unsafe condition would not constitute ordinary care in one thus passing who had knowledge of its defective and unsafe condition."

It will be seen that these authorities do not support the proposition that knowledge of the defect will of itself defeat a recovery.

Mr. Beach, in his work on Public Corporations, volume 2, section 1541, says: "The attempt to pass a dangerous place in a street in the darkness is not conclusive of negligence, but is a fact for the jury." *Dundas v. City of Lansing,* 75 Mich. 499, 13 Am. St. Rep. 457, 42 N. W. 1011, 5 L. R. A. 143, was a case where the plaintiff had previous knowledge of a defect in the

sidewalk and testified that if she had been thinking about it, or looking for it, she would not have stepped into it, and the supreme court of Michigan held that the question of contributory negligence was properly left to the jury. (See, also, *Village of Orleans v. Perry*, 24 Neb. 83, 40 N. W. 417; *Cuthbert v. City of Appleton*, 24 Wis. 387; *Kelly v. Southern Minnesota Ry. Co.*, 28 Minn. 102, 9 N. W. 588; *Argus v. Village of Sturgis*, 86 Mich. 344, 48 N. W. 1085; *Pinn v. City of Adrian*, 93 Mich. 504, 53 N. W. 614.) The latter case holds that where plaintiff knew of the defect some days before the accident occurred that "she had the right to assume that the walk had in the meanwhile been placed in good condition."

It seems to be the rule in some of the states that if one has knowledge of a dangerous place or obstruction in a street or sidewalk, and undertakes to pass over the same in the darkness, he becomes thereby guilty of such negligence that he cannot recover for any injury he may sustain in such venture. This is not the general rule, however, as established by the great weight of authority. The prevailing principle which seems to run through the cases on this subject is: That previous knowledge of a dangerous place in a street or sidewalk is not *per se* evidence of such negligence as will preclude a recovery except in those cases where the known defect is so great as to prevent a reasonably diligent person from attempting to pass over such street or sidewalk in any usual manner.

The supreme court of Georgia in *Samples v. City of Atlanta*, 95 Ga. 110, 22 S. E. 135, announces this principle very clearly in these words: "Where the danger is exceedingly small and trivial, it may not be at all negligent to disregard it. Where it is exceedingly great and obvious, it would be negligence *per se* to incur the hazard of being injured by it. In other cases it would be open to question whether incurring such possible or probable hazard would be consistent with ordinary care, and in cases of this kind the question of contributory negligence is one for determination by the jury."

In the case at bar the question of plaintiff's negligence in going upon the sidewalk where she received the injuries com-

plained of was properly submitted to the jury, together with the other facts in the case, and we find no reason for disturbing their verdict on that ground. We cannot say that the mere act of going upon this sidewalk with knowledge that ten days previous thereto it contained a broken board was such negligence as will defeat a recovery.

The second and most serious point urged by appellant is: That "in Idaho, municipal corporations are not liable in damages to the individual for injuries sustained by reason of defective streets or sidewalks." In support of this proposition appellant cites *Town of Waltham v. Kemper,* 55 Ill. 346, 8 Am. Rep. 652; *Davis v. Ada County,* 5 Idaho, 126, 95 Am. St. Rep. 166, 47 Pac. 93; *Sievers v. City and County of San Francisco,* 115 Cal. 648, 56 Am. St. Rep. 153, 47 Pac. 687; *Goddard v. Inhabitants of Harpswell,* 84 Me. 499, 30 Am. St. Rep. 373, 27 Atl. 958; *Winbigler v. Los Angeles,* 45 Cal. 36; *Chope v. City of Eureka,* 78 Cal. 588, 12 Am. St. Rep. 113, 21 Pac. 364, 94 L. R. A. 325; *Barnett v. Contra Costa Co.,* 67 Cal. 77, 7 Pac. 177; *Arkadelphia v. Windham,* 49 Ark. 139, 4 Am. St. Rep. 32, 4 S. W. 450; *Hill v. Boston,* 122 Mass. 357, 23 Am. Rep. 332; *Detroit v. Blakeley,* 21 Mich. 106, 4 Am. Rep. 450; *Young v. Charleston,* 20 S. C. 116, 47 Am. Rep. 827.

*Davis v. Ada County, supra,* is urged by appellant as an authority from this court sustaining the position of the city. In that case the sole question involved was the liability of a county of this state for damages caused on account of a defective and negligently constructed bridge. The conclusion reached in that case is plainly stated in the syllabus as follows: "A county is not liable for damages sustained by reason of negligence in construction and maintenance of bridges unless made so by statute."

It can only be said that that case decides any question involved in the case under consideration, upon the assumption that the same principle applicable to counties of this state applies equally to the cities and villages organized under the general laws of the state. We therefore approach this subject as an open question in this jurisdiction.

Appellant insists that cities organized under the general laws "are not distinguishable in principle from counties created by law." Upon this point we will first examine the legislation of the state relative to their respective powers and duties. The counties are political subdivisions of the state arbitrarily organized and governed entirely by the statutes enacted with a view to the general policy of the state at large as an aid to the complete administration of the state. Cities and villages organized under the general laws voluntarily assume municipal existence, and in addition to the exercise of the functions of self-government, transact matters of a *quasi private* and business character, not for the government of its inhabitants, but rather for the acquisition of a private gain for the municipality and its citizens.

Section 1, page 192 of Session Laws of 1899, provides that: "All cities, towns and villages containing more than one thousand and less than fifteen thousand inhabitants shall be cities of the second class," and appellant urges that this provision creates involuntary municipal corporations. It will be observed, however, from other provisions of the act from which the foregoing section is quoted, that in order to become a "city, town or village" within the meaning of the act, the inhabitants must make application therefor and hence it becomes voluntary. (Sess. Laws 1899, p. 197, sec. 40.)

Section 81 of the act of 1899 providing for the government of cities and villages (Sess. Laws 1899, p. 208), is in part as follows: "The city council, or board of trustees, shall have the care, supervision and control of all public highways, bridges, streets, alleys, public squares and commons within the city or village, and shall cause the same to be kept open and in repair and free from nuisance."

Subdivisions 27, 28 and 29 of section 73 of the same act authorize and empower cities and villages to "prevent and remove all encroachments into and upon all sidewalks, streets, avenues and alleys," and to "open, widen or otherwise improve any street, avenue, lane or alley," and to "create, open and improve new streets," etc.

Section 887, Revised Statutes of 1887, as amended by the, fifth legislative session (Sess. Laws 1899, p. 270), makes each incorporated city or village in the state a separate road district, and takes all control over the roads therein away from the board of county commissioners, and authorizes the council or board of trustees to appoint a road overseer and require bonds of him and a settlement at any time they may desire, and em-. powers them to remove him at pleasure.

The statute authorizes the levy and collection of road taxes, and subdivisions 4, 5 and 6 of section 73, Session Laws of 1899, page 202, authorize the *construction* and *repair* of sidewalks and the assessment of the expense thereof against the abutting property.

It will be seen from the foregoing that the power of cities and villages in this state over the streets is exclusive and unlimited, and the question therefore arises: Are their express or implied duties to the public and the individual commensurate with the powers granted them? It is conceded that there is no express statute in this state making municipal corporations liable in damages for negligence. The only remaining question is: Can such liability be said to be implied?

Beach on Public Corporations, at section 1496, says: "The general rule is that under the powers usually conferred upon municipal corporations in respect to streets within their limits, it is their duty to keep them in a reasonably safe condition for use by travelers in the usual modes, and that they are liable in damages for injuries resulting from neglect of such duty; and this rule extends not only to the roadbed but also to the structures over it."

Mr. Dillon in his work on Municipal Corporations, at sec-. tion 1017, fourth edition, uses almost the same language as quoted from Mr. Beach. It must be conceded that the American authorities are at variance on this question, but we think the great weight of authority from both text-writers and adjudicated cases sustains the liability of such municipal corporations. Much of this diversity of precedent appears to be due to the legislation of the respective states with reference to the powers and duties of cities and villages. In some of the states

denying municipal liability in such cases the courts seem to have treated and regarded cities as purely governmental instruments formed for no other purpose, and that for negligence in the performance of such governmental duties they should not be held liable. This view seems to have found place in the opinion of the court in the California case we are asked to follow—*Winbigler v. City of Los Angeles, supra.* The court there said: "The statute, as we have seen, imposes the duty in question not upon the corporation as such, but upon the city council and according to the argument the liability for its nonperformance would devolve upon them. Incorporated cities in this state are mere governmental instruments formed under the state laws for the purpose of internal administration. They are not distinguishable in principle from counties created by law for the same purpose." That case is the first positive expression we have found by the California court as to its position on this question, and notwithstanding our great respect for that distinguished court, their reasons given for the conclusion at which they arrived do not appeal to us as sound or well considered. The later cases from that court dealing with the same question indicate to us that the doctrine announced in the Winbigler case has been followed more on account of the precedent established than on account of soundness of the rule.

In *Chope v. City of Eureka* the same principle was involved, and Mr. Justice McFarland, who wrote the majority opinion, said: "There is, no doubt, some conflict of decisions on the question in other states, although it is to be observed that in New England and some other states there are statutory declarations of the liability. But in California the doctrine above stated has been clearly and continuously adopted, and if any change in the law is desirable, that change must be made by the legislature." Mr. Justice Works wrote a very concise dissenting opinion in that case, concurred in by Mr. Chief Justice Beatty contending that the city should be held liable.

*Arnold v. City of San Jose,* 81 Cal. 618, 22 Pac. 877, was a department decision by a divided court, and the opinion was rested entirely upon the authority of *Chope v. City of Eureka.* The court there, however, took occasion to repudiate the suggestion made in the Winbigler case that the duties imposed

are "not upon the corporation as such, but upon the city council," and that therefore any liability for nonperformance would rest upon them and not upon the corporation. That distinction is disposed of as follows: "We are unable to see any merit in the point. The corporation can act only through its agents; and what they do within the scope of their authority is 'the direct act of the city.' "

The California authorities are neither convincing or satisfactory on this question.

It seems to us that incorporated cities and villages act not only in a legislative and governmental capacity, but also in a private or business capacity, and that the care and repair of streets and sidewalks cannot reasonably be said to be the exercise of legislative or governmental discretion, but is rather a ministerial or business duty it owes to the individuals it impliedly invites to travel over its thoroughfares. This view is sustained by the following authorities: *Sutton v. City of Snohomish,* 11 Wash. 24, 48 Am. St. Rep. 847, 39 Pac. 573; Dillon on Municipal Corporations, 4th ed., sec. 1023; *Beach* on Public Corporations, sec. 1209; *City of Denver v. Dunsmore,* 7 Colo. 328, 3 Pac. 705; *Stevens v. City of Muskegon,* 111 Mich. 72, 69 N. W. 229, 36 L. R. A. 777.

Cities and villages become incorporated because of the fact that a large number of people have gathered together in the same community and deem it to their best interest, both governmental and business, to assume corporate existence. In such communities the travel both by day and night is so much greater in comparison with the travel over the country at large that the maintenance of good and safe thoroughfares for the protection of life and property becomes an urgent necessity, and such corporations should be held liable for a negligent discharge of that duty. The application of this principle should prove a spur to the officials of such corporations to keep the streets and sidewalks in a safe condition for the uses to which they are dedicated. Its denial would be to defeat the plainest justice in many instances.

The following are some of the many authorities sustaining the foregoing conclusion: Dillon on Municipal Corporations,

4th. ed., secs. 999, 1017; Beach on Public Corporations, secs. 757, 759, 1494; *Barnes v. District of Columbia,* 91 U. S. 540, 23 L. ed. 440; *District of Columbia v. Woodbury,* 136 U. S. 540, 10 Sup. Ct. Rep. 990, 34 L. ed. 472; *Sutton v. City of Snohomish,* 11 Wash. 24, 48 Am. St. Rep. 847, 39 Pac. 273; *City of Denver v. Dunsmore,* 7 Colo. 28, 3 Pac. 705; *Snook v. City of Anaconda,* 26 Mont. 128, 66 Pac. 756; *City of Cleveland v. King,* 132 U. S. 295, 10 Sup. Ct. Rep. 90, 33 L. ed. 334; *Levy v. Salt Lake City,* 3 Utah, 63, 1 Pac. 160; *Jansen v. City of Atchison,* 16 Kan. 58; *Farquar v. City of Roseburg,* 18 Or. 271, 17 Am. St. Rep. 732, 22 Pac. 1103; *Sullivan v. City of Helena,* 10 Mont. 134, 25 Pac. 94; *Nebraska City v. Campbell,* 2 Black, 390, 17 L. ed. 271; *Noble v. City of Richmond,* 31 Gratt. 271, 31 Am. Rep. 726; *Pettengill v. City of Yonkers,* 116 N. Y. 558, 15 Am. St. Rep. 442, 22 N. E. 1095.

Appellant's counsel suggests that under the law there is no fund out of which to pay such a claim and no adequate provision for raising revenue for such purposes, and that therefore it was not intended that such liability should attach.

Upon this point it is clear that the legislature has granted ample authority to the city to raise revenue to keep its streets open and in repair and thereby discharge its duty, and if it neglects such duty and commits a wrong it certainly cannot, with any degree of reason say it has done what the legislature had in mind and is without revenue to pay for its torts. The legislature must be understood to have contemplated that the city would discharge its duty and armed it with adequate means and authority to do so. It had all the authority requisite to have kept its streets in repair and thereby avoid the liability to which it now finds itself subjected.

The other assignments of error have not been argued in the briefs, but we see no error in them and will not discuss them in this opinion.

The judgment and order appealed from are affirmed with costs to respondent.

Sullivan, C. J., and Stockslager, J., concur.